OPINIONS OF THE SUPREME COURT OF OHIO
The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.
Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Justine Michael, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.
NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

The State ex rel. McMillan v. Ashtabula County Board of Elections.

[Cite as State ex rel. McMillan v. Ashtabula Cty. Bd. of Elections (1992),     Ohio St.3d     .]

Elections -- Declarations of candidacy and all separate petition papers must be filed at the same time as one instrument -- R.C. 3513.05, applied.

(No. 92-1911 -- Submitted and decided October 22, 1992 -- Opinion announced December 9, 1992.*)

In Prohibition.

Debra S. McMillan, relator, filed the instant complaint in prohibition to prevent the Ashtabula County Board of Elections, respondent, from placing the name of William A. Kobelak on the November 3, 1992 ballot as a candidate for Judge of the County Court of Ashtabula County, Eastern Division. McMillan had protested the validity of Kobelak's candidacy with the board.

According to an employee of the board, in a written statement submitted to the board at its September 9, 1992 protest hearing, she miscalculated the number of signatures Kobelak needed on his nominating petition. She informed Kobelak that he needed eighty-five signatures; he actually needed 167 signatures.

Acting on this misinformation, Kobelak filed several petition papers containing 125 signatures with the board on July 2, 1992. Apparently after learning he needed 167 signatures, Kobelak, on August 4, 1992, filed more petition papers. These latter petition papers contained 197 signatures.

After reviewing the second set of petition papers the board determined that they contained the signatures of 173 qualified electors, six more than required. The board evidently did not review Kobelak's first set of petition papers for sufficiency of signatures.

The board rejected McMillan's protest, and McMillan filed this complaint for writ of prohibition.

Debra S. McMillan, pro se.
Gregory J. Brown, Prosecuting Attorney, for respondent.

Per Curiam.   R.C. 3513.05 states:

"* * * The declaration of candidacy and all separate petition papers shall be filed at the same time as one instrument.  * * *"

McMillan, inter alia, argues that the board had no authority to accept any petition papers other than those first filed on July 2 and, since those petition papers contained fewer than the number of legally required signatures, the board should have ruled Kobelak off the ballot.  The board responds that a candidate who relies to his detriment on erroneous information given him by a board of elections should be permitted to file a new set of petition papers.  We agree with McMillan and grant the writ.  With this disposition, we need not address McMillan's remaining arguments.

In State ex rel. Weaver v. Wiethe (1965), 4 Ohio St.2d 1, 33 O.O.2d 1, 210 N.E.2d 881, Weaver, a candidate for city council, filed a nominating petition consisting of several separate petition papers that contained 562 signatures.  Three days later, the board of elections notified the candidate that only 395 signatures, 105 less than needed, were valid.  The candidate then attempted to withdraw his nominating petition to obtain additional valid signatures on additional petition papers, but the board refused this demand.  Nevertheless, and within the deadline, the candidate presented additional petition papers, containing 199 signatures, to the board.  The board, however, rejected the candidacy.

In a mandamus action seeking to place Weaver's name on the ballot, we construed Section 4, Article IX of Cincinnati's charter, which reads much like R.C. 3513.05 and states:

"* * * [A]ll separate papers comprising a nominating petition shall be assembled and filed * * * as one instrument * * *."

We held that traditional notions of fair play might allow a candidate to withdraw his petition papers or file additional papers.  However, we concluded that the plain language of the charter prevented this.  Moreover, we observed that R.C. 3501.38(I) prohibits altering, correcting, or adding to a petition after it is filed in a public office.  Accordingly, we denied the writ.

In State ex rel. Senn v. Cuyahoga Cty. Bd. of Elections (1977), 51 Ohio St.2d 173, 5 O.O.3d 381, 367 N.E.2d 879, Senn, a candidate for judge, submitted eleven part-petitions with signatures to a clerk at the board of elections for a preliminary check to determine whether Senn had obtained enough valid signatures.  The next day, the clerk informed Senn that he had sufficient signatures.  Senn added another part-petition with additional signatures and filed the twelve part-petitions with the board, paying his filing fee of $50.  On the next day, the filing deadline, Senn learned that he had not filed his master form.  Thirty-eight minutes before the deadline, he filed the form, which he had not circulated, with the board.

In reviewing the court of appeals' order granting a writ to place Senn's name on the ballot, we held that placing Senn's name on the ballot violated R.C. 3513.05 and its admonition that the declaration of candidacy and all part-petitions shall be filed at the same time as one instrument.  Consequently, we reversed the court of appeals' judgment and denied the writ.

Under this authority, a candidate may file only one declaration of candidacy and set of petition papers as one instrument with the board of elections. Thus, in this case, Kobelak's first filing is the only filing permitted. Since this filing did not contain enough signatures, the board did not have the authority to place his name on the ballot. Moreover, since a candidate may not alter, correct, or add to a petition after its filing, R.C. 3501.38(I), Kobelak may not file, nor may the board of elections accept, additional petition papers to add to the signature total.

As to Kobelak's reliance on the misinformation of the board employee, the mistaken advice or opinion of an employee of the board of elections does not estop the board from removing a candidate's name from the ballot. State ex rel. Svete v. Geauga Cty. Bd. of Elections (1965), 4 Ohio St.2d 16, 33 O.O.2d 139, 212 N.E.2d 420; State ex rel. Shaw v. Lynch (1991), 62 Ohio St.3d 174, 176-177, 580 N.E.2d 1068, 1070. Thus, Kobelak cannot excuse his insufficient petition on this basis.

Accordingly, we grant the writ of prohibition and order the board of elections to remove Kobelak's name from the November 3, 1992 ballot.

Writ granted.

Sweeney, Acting C.J., Holmes, Douglas, Wright and H. Brown, JJ., concur.

Resnick, J., dissents.

Moyer, C.J., not participating.

* We granted the writ in this case in an order dated October 22, 1992, "consistent with the opinion to follow." See 65 Ohio St.3d 1438, 600 N.E.2d 681. We announce the "opinion to follow" today.