The STATE of Ohio ex rel. STURGILL, Appellee,

v.

LORAIN COUNTY BOARD OF ELECTIONS;  Blackwell, Secy. of State, Appellant.

[Cite as *State ex rel. Sturgill v. Lorain Cty. Bd. of Elections*,
164 Ohio App.3d 272, 2005-Ohio-5660.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 05CA008819.

Decided Oct. 26, 2005.

Patrick D. Riley, for appellee.

Jim Petro, Attorney General, and Richard N. Coglianese, Deputy Attorney General, for appellant, J. Kenneth Blackwell, Secretary of State.

Scott F. Serazin, for Lorain County Board of Elections.

Per Curiam.

{¶ 1} Appellant, J. Kenneth Blackwell, Ohio Secretary of State, appeals from the Lorain County Court of Common Pleas, which issued a writ of mandamus ordering the Lorain County Board of Elections to accept certain candidate petition forms from appellee, William Sturgill, and to place his name on the November ballot for election to the Lorain City Schools Board of Education. We find the issuance of the writ improper and reverse the order of the trial court.

## I

{¶ 2} On March 14, 2005, Sturgill filed a petition for candidacy with the Lorain County Board of Elections, but due to misinformation received from employees at the board of elections, he failed to submit the proper number of signatures on his petition, and, therefore, failed to comply with the governing statute. Because of his failure to comply, Sturgill was ultimately denied inclusion on the ballot.

{¶ 3} On September 28, 2005, Sturgill filed a complaint in the Lorain County Court of Common Pleas, seeking declaratory and injunctive relief, as well as a writ of mandamus. After a hearing, the court granted only the writ of mandamus. The court ordered the board to accept Sturgill's petitions and to place his name on the November ballot. The Secretary of State appealed to this court and moved to expedite consideration of the appeal due to the pendency of the election. This court ordered the parties to brief the issues by 4:00 p.m. on October 21, 2005, and oral argument was heard on October 24, 2005. Two assignments of error were alleged, but have been consolidated to facilitate review.

## II

### First Assignment of Error

The trial court erred by refusing to apply the doctrine of laches to this election challenge.

### Second Assignment of Error

The trial court erred by granting a writ of mandamus ordering appellee's petition to be accepted and placing appellee on the ballot for the November 8, 2005 election.

{¶ 4} The Secretary of State asserts that the trial court erred as a matter of law in ordering the board of elections to accept Sturgill's petitions and to place his name on the ballot. The Secretary of State argues that Sturgill's delay in seeking this relief denies its availability at this late date. That is, even if mandamus had been proper at the time of the harm in March, it was no longer available at the time he filed his complaint in September. We agree that the doctrine of laches does apply. See *State ex rel. Residents' Initiative Voting Alliance v. Cuyahoga Cty. Bd. of Elections,* 108 Ohio St.3d 125, 2005-Ohio-5547, 841 N.E.2d 753, at ¶ 8.

{¶ 5} The issues in this case are questions of law, and, therefore, we will review the trial court's grant of mandamus de novo. See *Cincinnati Entertainment Assoc., Ltd. v. Hamilton Cty. Bd. of Commrs.* (2001), 141 Ohio App.3d 803, 809–10, 753 N.E.2d 884. To be entitled to a writ of mandamus, a relator must

establish (1) a clear legal right to the requested relief, (2) a clear legal duty to perform these acts on the part of the respondent, and (3) the lack of a plain and adequate remedy in the ordinary course of law. *State ex rel. Neff v. Corrigan* (1996), 75 Ohio St.3d 12, 16, 661 N.E.2d 170. The "function of mandamus is to compel the performance of a present existing duty as to which there is a default. It is not granted to take effect prospectively, and it contemplates the performance of an act which is incumbent on the respondent when the application for a writ is made." *State ex rel. Willis v. Sheboy* (1983), 6 Ohio St.3d 167, 6 OBR 225, 451 N.E.2d 1200, paragraph two of the syllabus. The material facts of this case are generally undisputed and begin with Sturgill's decision to seek election to the Lorain City Schools Board of Education.

{¶ 6} Sometime in January 2005, Sturgill obtained certain forms and information from the Lorain County Board of Elections, including blank forms titled "Nominating Petition and Statement of Candidacy," along with instructions to obtain at least 25 signatures on these petition forms. He was advised that more than 25 signatures were recommended in the event that some of the first 25 were deemed invalid. Sturgill diligently obtained 98 signatures and returned to the board of elections in early March 2005 to submit the completed package. At that time, he was erroneously informed by an employee at the board of elections that he was allowed to submit no more than 75 signatures and that because his 98 signatures were too many, his petition was unacceptable. Instead, he was given a new package of blank forms and erroneously instructed to obtain at least 25 but no more than 75 signatures on these petition forms. Relying on these instructions, Sturgill obtained 63 signatures and returned to the board of elections on March 14, 2005, to submit the completed package. In the course of this legal action, Sturgill has insisted that he also attempted to submit the 98 original signatures on that day, along with the 63. The board of elections employee improperly accepted his submission with 63 signatures, allegedly refused to accept the other 98 signatures, and stamped his statement of candidacy as having been submitted.

{¶ 7} In actuality, Sturgill was required to obtain and submit a minimum of 150 signatures. See R.C. 3513.254(A), which instructs candidates for a board of education of a city school district having a population of 50,000 to 100,000, as ascertained by the preceding federal census, to obtain 150 signatures from qualified electors of the school district. According to the 2000 federal census, Lorain's population is 68,652. U.S. Census Bureau, State and County QuickFacts (2005), available on the Internet at http://quickfacts.census.gov/qfd/states/39/3944856.html (last visited on Oct. 24, 2005). Both the above statute and the census data are publicly available information, and both were as available to Sturgill as they were to the board of elections. It is undeniable that the

instruction that Sturgill received from the board of elections employee was in error, as was the employee's acceptance of 63 signatures and alleged refusal of the additional 98 signatures (for a total of 161). However, it is equally undeniable that Sturgill's submission, containing only 63 signatures, was noncompliant with R.C. 3513.254.

{¶ 8} A candidate is obligated to investigate, learn, or know the law governing the election process. See *State ex rel. Donegan v. Cuyahoga Cty. Bd. of Elections* (2000), 136 Ohio App.3d 589, 595, 737 N.E.2d 545. Any candidate who instead chooses to rely on the advice or instruction of a board of elections employee does so at his own risk. See *State ex rel. McMillan v. Ashtabula Cty. Bd. of Elections* (1992), 65 Ohio St.3d 186, 189, 602 N.E.2d 631; *State ex rel. Chevalier v. Brown* (1985), 17 Ohio St.3d 61, 63, 17 OBR 64, 477 N.E.2d 623. "To hold otherwise would permit the advice of representatives of the Board or the Board itself to take precedence over the enacted law of the General Assembly." *Donegan*, 136 Ohio App.3d at 595, 737 N.E.2d 545. Sturgill explains rather persuasively that he was given erroneous advice by the board of elections employee and that he relied on that advice to his detriment. However, this is an argument without legal effect. The obligation was on Sturgill to know the law, and he admittedly failed this obligation.

{¶ 9} Sturgill next argues that when he arrived at the board of elections on March 18, 2005, the attending employee improperly accepted and stamped his petition with only the 63 signatures, despite the fact that he was prepared to submit 161 signatures. From this, Sturgill concludes that the employee failed a clear duty to accept the proper petition, i.e., one with 161 signatures. See R.C. 3501.39; R.C. 3513.254. While we agree, we must also recognize that this employee's failure does not relieve Sturgill of his above-stated duty to know the law governing the election process. See *Donegan*, 136 Ohio App.3d at 595, 737 N.E.2d 545.

{¶ 10} "Relators in election cases must exercise the utmost diligence * * * [and] act with the required promptness[;] if they fail to do so, laches may bar the action." *State ex rel. Fuller v. Medina Cty. Bd. of Elections*, 97 Ohio St.3d 221, 2002-Ohio-5922, 778 N.E.2d 37, at ¶ 7. Just as Sturgill was obligated to know the law governing the election process, he was obligated to object promptly to a violation of that law. See id. When the employee improperly rejected his otherwise proper petition (with 161 signatures) on March 18, 2005, Sturgill was obligated to protest at that time, and he also had further recourse to seek court action at that time. His failure to know the governing law may have impaired his ability to protest at that time, but that is no excuse. See *State ex rel. Phillips v. Lorain Cty. Bd. of Elections* (2001), 93 Ohio St.3d 535, 539, 757 N.E.2d 319

(election laws require strict adherence). Sturgill was apparently unaware of the error until late August 2005, when his petition was listed as a board meeting agenda item due to its insufficient number of signatures (63 being fewer than the necessary 150). Therefore, Sturgill did not seek a legal remedy until he filed his complaint on September 28, 2005, over five months after the violation. Under the prevailing Ohio Supreme Court case law, this was too long to wait. See, e.g., *Residents' Initiative,* 108 Ohio St.3d 125, 2005-Ohio-5547, —— N.E.2d ——, at ¶ 9; *State ex rel. Vickers v. Summit Cty. Council,* 97 Ohio St.3d 204, 2002-Ohio-5583, 777 N.E.2d 830, at ¶ 13; *State ex rel. Commt. for the Referendum of Lorain Ordinance No. 77–01 v. Lorain Cty. Bd. of Elections,* 96 Ohio St.3d 308, 2002-Ohio-4194, 774 N.E.2d 239, at ¶ 26; *State ex rel. Newell v. Tuscarawas Cty. Bd. of Elections* (2001), 93 Ohio St.3d 592, 595, 757 N.E.2d 1135. Accordingly, even if mandamus had been proper at the time of the violation in March, it was no longer available at the time Sturgill filed his complaint in September.

{¶ 11} In granting the writ of mandamus, the trial court acknowledged that "the general rule of law is that the principle of equitable estoppel may not be applied against the state or its agencies when they are performing a governmental function." See *Sun Refining & Marketing Co. v. Brennan* (1987), 31 Ohio St.3d 306, 307, 31 OBR 584, 511 N.E.2d 112 (stating the general rule). The court went on to speculate that "there must be exceptions." The court then rationalized that "[t]his case presents to this [c]ourt too many statutory violations for the Board to rely on the general rule." We disagree, and we find that the Ohio Supreme Court has upheld the general rule in similar cases. See, generally, *State ex rel. McMillan v. Ashtabula Cty. Bd. of Elections* (1992), 65 Ohio St.3d 186, 602 N.E.2d 631. See, also, *State ex rel. Shaw v. Lynch* (1991), 62 Ohio St.3d 174, 176, 580 N.E.2d 1068. We also conclude that any of the supposed errors that occurred after Sturgill's initial filing on March 18, 2005, are immaterial, because the election law strictly prohibits the filing of alterations, corrections, or supplements to the petition, or the filling of another petition. R.C. 3501.38(I) through (K); R.C. 3513.261; see, also, *McMillan,* 65 Ohio St.3d at 189, 602 N.E.2d 631; *State ex rel. Canales–Flores v. Lucas Cty. Bd. of Elections,* 108 Ohio St.3d 129, 2005-Ohio-5642, 841 N.E.2d 757, at ¶ 16 and 36. Therefore, we find the trial court's issuance of mandamus to be unsupported under the law.

{¶ 12} Because Sturgill failed to timely protest the error by the board of elections, as is required in election cases, a writ of mandamus was no longer available. This deficiency could not be overcome by principles of equitable estoppel. Mandamus will not lie when a candidate waits until ballots are printed and absentee ballots are about to be mailed out to raise issues that might have been raised months before. See, e.g., *Mason City School Dist. v. Warren Cty. Bd. of Elections,* 107 Ohio St.3d 373, 2005-Ohio-5363, 840 N.E.2d 147, at ¶ 19.

Thus, the petition for writ of mandamus should have been denied. The Secretary of State's assignments of error are sustained.

### III

{¶ 13} The Secretary of State's assignments of error are sustained. Pursuant to our authority under App.R. 12(B) to render the judgment that the trial court should have entered, we reverse and enter judgment in favor of the Secretary of State.

Judgment accordingly.

SLABY, P.J., WHITMORE and CARR, JJ., concur.